(84 N. W. Rep. 357.)

---

CATHERINE A. RILEY *vs.* JOHN RILEY.

Opinion filed November 10, 1900.

**Cancellation of Deed—Burden of Proof—Alteration.**

> In a case where a plaintiff seeks to annul a deed of conveyance, and alleges as ground of relief that the deed has been materially altered after its execution, the burden to show such alteration rests upon the plaintiff; and in such cases the plaintiff must make out his case by evidence which is clear, strong, and convincing.

**Evidence Insufficient.**

> Applying the rule above stated to the evidence in this case, *held*, that the plaintiff has failed to establish her cause of action.

Appeal from District Court, Pembina County; *Sauter*, J.

Action by Catherine A. Riley against John Riley and others. From a judgment dismissing the action, plaintiff appeals.

Affirmed.

*W. J. Kneeshaw* and *Tempeton & Rex*, for appellant.

*Burke & Vick*, for respondents.

WALLIN, J. This action is brought to annul and cancel a deed of record purporting to convey three separate pieces of land. The case was tried without a jury, and the trial court entered judgment dismissing the action. Plaintiff appeals from the judgment, and demands a retrial of the entire case in this court.

The facts embraced in the record which are uncontroverted may be stated briefly as follows: The plaintiff is the widow of one William Riley, who departed this life on the 8th day of October, 1896. Plaintiff intermarried with the deceased in the month of January, 1893. The defendants, except the administrator and the guardian, are the heirs at law of the deceased and his children by a former wife. The deed in question purports to convey three pieces or parcels of real estate, situated in the county of Pembina. The land first described in the deed is an undivided one-half of a certain quarter section of land. This description is written out at length in words, with numbers in brackets added. The second and third parcels are not described at length in words, but are described as follows: "Also the E. ½ of N. W. ¼ and W. ½ of the N. E. ¼, Sec. 10, town 162, range 52, containing 160 acres; also, S. W. ¼ of N. W. ¼, S. 10-162-52. (Known as the 'George O'Hara 40-Acre Lot.')" The

deed describes the plaintiff as party of the first part, and said William Riley, deceased, as party of the second part, and purports to have been made in consideration of one dollar in hand paid to the party of the first part. It bears date on March 2, 1895, and was acknowledged by the plaintiff on that day before one Paul Johnson, a justice of the peace. This deed was delivered to the deceased ,and was found in his barn some months after his death, and was subsequently recorded. The deed, in all its parts, is in the handwriting of William Riley, deceased, and the plaintiff concedes that the same was signed and delivered by her voluntarily. The plaintiff's contention, as stated in the brief of her counsel, is, substantially, that at the time the deed was executed and delivered by the plaintiff the only tract of land described in the same was the undivided half of a certain tract, containing 160 acres of land, and that such description was written out at length in words as well as in numbers, and that subsequently said deed was altered, without plaintiff's knowledge or consent, by inserting in the deed a description of two other parcels of land owned by the plaintiff, and which are hereinbefore referred to and described. Defendants answer the complaint ,and deny that the deed has been altered or added to as alleged in the complaint, and the issue of fact thus joined is the decisive question in the case. Upon this issue the trial court found adversely to the plaintiff, and the judgment entered below recites that the action was dismissed "upon the failure of the plaintiff to establish the facts set up in her complaint by clear and satisfactory evidence." Some of the evidence offered by the plaintiff in support of her contention is direct and positive in its character. The plaintiff testified in her own behalf, and her testimony was to some extent corroborated by other witnesses who testified for the plaintiff. The original deed was put in evidence, and the same by consent of counsel was presented to this court for its inspection, and counsel for appellant claims that the deed bears evidence on its face of having been altered after its execution and delivery; but this court, unaided as it is by the testimony of experts in handwriting, is unable to say, after an examination of the instrument, that the same appears on its face to have been altered after its delivery.

Excluding the deed from consideration ,the testimony bearing upon the matter of the alleged alteration of the instrument is wholly oral. The plaintiff swears positively that she read the deed before signing it ,and that but one tract of land was described in it at the time she signed the same, and, further, that she never authorized any one to insert the descriptions in the deed which describe the other two parcels in question. One Robert Baskin was sworn in plaintiff's behalf, and testified in substance that long after the date of the execution of the deed in question, and about one week prior to the decease of William Riley, he (the witness) was present at and heard a conversation between the plaintiff and William Riley, her husband, in which the latter urged the plaintiff to deed back the homestead to him; that the plaintiff positively refused to do so. The homestead referred to is one of the pieces of land described in the deed, and which

plaintiff claims was not described in the deed when she signed it. With respect to this testimony counsel argue with much persistency and force that the same tends strongly to show that when the conversation occurred the plaintiff had not in fact previously conveyed the homestead to her husband by the deed in question or at all. We concede that this testimony tends to corroborate the positive evidence of the plaintiff. Another witness for plaintiff (one Eastman) testified to a conversation which he (the witness) had with the deceased only a few days prior to his death, and concerning the land in question. This witness testified in substance that the deceased then stated his belief that he had not long to live, and, further, that he was anxious to adjust his business affairs equitably before his death, and to that end was desirous of obtaining from his wife a deed of conveyance of the said homestead. In 'the same connection the witness testified: That the deceased stated that he feared that the deed which he already had in his possession, and which the deceased stated was then in the barn of the deceased, would not stand law. That the deceased further said that he wanted his wife to change the deed, and that he would give her some place, and that he wanted to divide his property himself; that the deed which he then had was written out by himself; and that he "didn't know whether it was right or not. And he said that she had promised him that if he would go and write the deed ,and fix her right, that she would sign it back to him." Eastman further testified that the deceased further stated that he had not written out the deed "all at one time; that he had filled in some ink, and corrected some errors that was in it. And he said that it was not in the same condition. He said that he was afraid that it would not stand law." This testimony was received against objection thereto, and the same was clearly inadmissible, upon the ground that it details a conversation had with the deceased when not in the presence or hearing of the plaintiff, unless the testimony reveals an admission by the deceased against his interest. But, granting that the evidence is admissable, we are of the opinion that the testimony does not necessarily show that the deed had been altered and forged, as charged in the complaint; nor·is there anything in it which shows that any corrections or alterations which the deceased made in the instrument were made subsequent to its delivery. The deceased did not state that he knew the deed was worthless, and for that reason would not stand law. He went no further than to express doubts of the validity of the deed. He said that he "didn't know whether it was right or not." His reference to the condition of the deed is, we think, too indefinite to indicate what he meant by the reference.

Turning to the evidence offered by the defense, we do not deem it necessary to set out the same at any length. It will suffice to state in general terms that at least two witnesses,—one a brother and the other a daughter of the deceased,—both of whom were present when the deed was acknowledged, testify positively that

the deed when offered in evidence was in the same condition it was in when it was executed and delivered, and that no additional descriptions of land had been inserted in the deed after its execution. This direct and positive evidence came from witnesses who show themselves to be in a position to know just what was in the deed when it was delivered, and, further, to know what the plaintiff at and prior to the execution of the deed agreed to convey by the deed in question. The testimony of these witnesses was to some extent corroborated by the justice of the peace who took the acknowledgment of the deed. The case, therefore, is one wherein the evidence is in square conflict. Nor are we prepared to say on which side the evidence preponderates. Nor is it necessary in such a case as this that the court should reach a definite conclusion as to the preponderance of the evidence. In view of the conflicting character of the oral evidence, the deed itself, being a written instrument, must turn the scale against the plaintiff. To overcome the deed the evidence must be clear, strong, and convincing that the same is not the deed of the parties. We fully agree with the trial court, which heard and saw the witnesses, that the plaintiff has not offered evidence sufficiently strong and convincing to overcome the written instrument. The case comes under the rule laid down in *Jasper* v. *Hazen*, 4 N. D. 1, 58 N. W. Rep. 454. The judgment of the District Court must be affirmed. All the judges concurring.

Young, J., having been of counsel, did not sit in the case; C. J. Fisk, judge of the First Judicial District, sitting by request.