[File No. 6213.]

A. J. HUNT, Respondent, v. HAZEL L. HOLMES, a Minor, by Ida E. Holmes, Guardian ad Litem for said Minor, and H. W. Gill, Executor of the Last Will and Testament of Charles T. Holmes, Deceased, Appellants.

(252 N. W. 376.)

Opinion filed January 15, 1934.   Rehearing denied February 3, 1934.

*Hanson & Hanson,* for appellant.

*Palda, Brace & Palda,* for respondent.

Burke, J. In this action the plaintiff, in substance, alleges in his complaint that prior to the 6th day of November, 1930, one Ralph v. Carter was indebted to Charles T. Holmes and to secure the payment of said indebtedness executed a mortgage on lots 5 and 6, block 22 of the townsite of Portal, Burke county, North Dakota; that on or about the 6th day of November, 1930, said Ralph Carter and Mrs. Carter, in payment of said indebtedness, made, executed and delivered to the said Charles T. Holmes, a warranty deed, conveying said premises; that the name of Hazel L. Holmes was inserted in the deed above described, as grantee at the express request and direction of the said Charles T. Holmes for the purpose of concealing the fact that said property belonged to the said Charles T. Holmes; that at the time of said conveyance Charles T. Holmes was indebted to this plaintiff and an action was then pending in the district court of Burke county which resulted in a judgment of $5,575.79 and costs taxed at $25.55, and it was further adjudged in said action that the defendant, H. W. Gill, as executor of Charles T. Holmes, deceased, pay the said judgment with costs out of the estate of said Charles T. Holmes in the regular course of administration thereof; that a transcript of said judgment was filed in the county court of Burke county as a claim against said estate and was allowed and ordered paid; that there are other creditors of said estate having claims allowed and ordered paid, but there is not sufficient assets in the hands of the executor for the payment thereof, and the plaintiff brings this suit in his own name for himself and on behalf of the other creditors; that there was no consideration for the deed to Hazel L. Holmes and the deed was never delivered; plaintiff alleges that the said property is, in equity, a part of the estate of Charles T. Holmes and prays that the same be subjected by said executor to the payment of claims against said estate; that the title of said estate be quieted as against the defendant Hazel L. Holmes.

Hazel L. Holmes, appearing by Ida Holmes, her guardian ad litem, for her answer alleges, in substance, that since the 6th day of November, 1930, she has been the owner in fee simple of the said premises; that Charles T. Holmes had the said land conveyed to her as a gift

and did direct and procure Ralph V. Carter and Mary V. Carter to issue and give said deed to said premises to Hazel L. Holmes as grantee for her use and benefit; that Ida Holmes, for the use and benefit of the said Hazel L. Holmes, paid past due delinquent taxes against said premises for the years 1928, 1929, 1930, 1931, amounting to $393.76, and the further sum of $120.00 due on a real estate mortgage against said premises and $30.00 for repairs. Answering, the defendant further alleges that Hazel L. Holmes is the owner in fee of said premises and prays to have the title quieted in her.

There is a stipulation of facts in the case wherein it appears that Charles T. Holmes died on the 10th day of November, 1931. The 5th paragraph of the stipulation states that on the 6th day of November, 1931 (this is evidently a clerical error, as the deed is dated November 6th, 1930), Ralph V. Carter and Mary V. Carter for the purpose of making payment of said indebtedness to Charles T. Holmes made, executed and delivered to said Charles T. Holmes their certain deed, conveying the property above described, and that said Hazel L. Holmes was named as grantee in said deed at the request of said Charles T. Holmes and with the consent of the said Ralph V. Carter and Mary V. Carter; that at the time of said conveyance Charles T. Holmes was indebted to the plaintiff and there was an action then pending which resulted in a judgment in favor of the plaintiff for the sum of $5,575.79, which judgment the executor of Charles T. Holmes was ordered to pay and on the filing of the said judgment against the said estate of Charles T. Holmes in the county court, it was allowed and ordered paid by the county judge; that the deed was delivered by the said Charles T. Holmes to William Metzger, who filed the deed for record in the office of the register of deeds, April 15, 1932, and the same was duly recorded. That at the time of the execution of the deed to Hazel L. Holmes she was fifteen years of age and that at said time the said Ralph V. Carter and Mary V. Carter, his wife, for the purpose of paying and satisfying the indebtedness to the said Charles T. Holmes, as set forth in paragraph three of the complaint, agreed to convey said premises to the said Charles T. Holmes and thereupon the said Charles T. Holmes, desiring and intending to convey the said premises as a gift to his daughter, the said Hazel L. Holmes, and in furtherance of said desire and intent, the said Charles T. Holmes did

then direct and procure the said Ralph V. Carter and Mary V. Carter, his wife, to issue and give said deed to said premises in the name of said Hazel L. Holmes, as grantee.

There is some oral testimony from which it appears that shortly after the execution of the deed, Charles T. Holmes delivered the deed to William Metzger, who states that at the time of handing him the deed he said he was giving the property to Hazel and that if anything happened to him he would want the girl to have some—(witness interrupted); that it was impossible to put the deed on record as the taxes were not paid for the year 1928 and from then on. As soon as the taxes were paid he had the deed recorded. Mr. Chezik testified that Holmes told him that he was making a deal for the property and was going to give it to his kid. The witness Donovan testified that in October, 1930, Holmes told him that he had taken the property over from Mr. Carter for Hazel, his daughter. The county judge testified that the total amount of all claims against the Holmes estate was $7,362.84; that the exemptions amounted to $3,500.00 and that the total inventory of the North Dakota property, in said estate, in North Dakota was the sum of $10,586.22. There is further testimony showing that Holmes had real estate in Michigan.

The deed in question was introduced in evidence without objection and no evidence of an alteration therein was offered. The trial judge found as a fact that the parties had stipulated the facts "wherein it was stipulated that the name of the said Hazel L. Holmes was inserted in said deed as grantee at the request of said Charles T. Holmes. That instead of relying upon the said stipulation, the defendants offered in evidence the deed hereinbefore mentioned. . . . This exhibit was offered and received as evidence of title by the defendant, Hazel L. Holmes. This deed bears upon its face unmistakable evidence of an alteration in that the name 'Hazel L. Holmes' appears to have been written over an erasure, and a careful inspection shows that the name 'Charles T. Holmes' was erased therefrom, portions of the outlines of the letters in said name appearing on inspection under a lens. The deed also on inspection shows that the words 'Portal, N. D.,' following the name of the grantee as originally written, were erased and the words 'whose post' were written over such erasure, followed by the words 'Office address is Portal, N. D.' It is, therefore, apparent to

the court that the deed as offered and received was altered by someone at some time after its execution, that the said alteration is wholly unexplained by the defendant, Hazel L. Holmes," and the deed is invalid. The court further finds that there was no delivery of the deed, no consideration that the transaction was fraudulent as against the plaintiff. From a judgment entered thereon the defendants appeal and demand a trial de novo in this court.

The question of an alteration in the deed was not an issue in the pleadings, or at the trial. On the contrary, plaintiff, in his complaint, alleges that on or about the 6th day of November, 1930, Ralph V. Carter and Mrs. Carter made, executed and delivered to Charles T. Holmes a warranty deed conveying said premises; that the name of Hazel L. Holmes was inserted in the deed above described as grantee at the express direction of the said Charles T. Holmes. The parties stipulated that, in the deed Carter executed in payment of his indebtedness to Holmes, Hazel L. Holmes was named as grantee at the request of Charles T. Holmes and with the consent of Ralph V. Carter and Mary V. Carter. Where the name of Hazel L. Holmes appears as grantee in the deed it does appear that there was some erasure over which "Hazel L." was written, but there is nothing to show why or when the erasure was made, and even if that question was at issue, according to one line of decisions (which appears to be the great weight of authority), "Where an alteration is apparent on the face of a deed, it is presumed to have been made before or at the time of the execution of the instrument." 1 Jones, Ev. p. 327, § 196. Citing Riley v. Riley, 9 N. D. 580, 84 N. W. 347. In that case the question of a material alteration in a deed was an issue. It was claimed that after its execution the deed had been altered by including more land. The court said: "The original deed was put in evidence, and the same by consent of counsel was presented to this court for its inspection, and counsel for appellant claims that the deed bears evidence on its face of having been altered after its execution and delivery; but this court, unaided as it is by the testimony of experts in handwriting, is unable to say, after examination of the instrument, that the same appears on its face to have been altered after its delivery." In the syllabus the court says: "In a case where a plaintiff seeks to annul a deed of conveyance, and alleges as ground of relief that the deed has been materially altered after its execution, the

burden to show such alteration rests upon the plaintiff; and in such cases the plaintiff must make out his case by evidence which is clear, strong and convincing." In support of this statement quoted from Jones is cited Florida, Georgia, Iowa, Kentucky, Michigan, Mississippi, Missouri, North Dakota, Pennsylvania, South Dakota, Tennessee, Texas, Washington; Hanrick v. Patrick, 119 U. S. 156, 30 L. ed. 397, 7 S. Ct. 147; and Rose's notes; Little v. Herndon, 10 Wall. 26, 19 L. ed. 878; Malarin v. United States, 1 Wall. 282, 17 L. ed. 594; Doe ex dem. Tatum v. Catomore, 16 Q. B. 745, 117 Eng. Reprint, 1066. "A deed cannot be altered after it is executed without fraud or wrong, and the presumption is against fraud or wrong." Trowel v. Castle, 1 Kebble, 21, 83 Eng. Reprint, 787. If the question of alteration was involved it is clear that plaintiff has failed in his proof.

The question of the delivery of the deed, in the instant case, is controlled by the case of Hulet v. Northern P. R. Co. 14 N. D. 209, 103 N. W. 628. In that case the father purchased land from the Northern Pacific Railway Company and had the deed made in his daughter's name. The court said: "It is clear that, if both the grantor and the donor intended that the deed should take effect as an absolute conveyance of the title to the grantee named in the deed, the delivery of the deed to the father for the daughter was sufficient to vest the title in her. The deed was beneficial to the grantee, and imposed no conditions or obligations upon her. Under such circumstances the delivery of a deed by a grantor to a third person for the grantee is a sufficient delivery to vest the title in the grantee even though this grantee is ignorant of the fact. This is so because in such cases the law presumes acceptance by the grantee in the absence of evidence of nonacceptance. The actual manual possession of the instrument by the grantee is not necessary or important. Arnegaard v. Arnegaard, 7 N. D. 475, 75 N. W. 797, 41 L.R.A. 258."

In the instant case we are convinced by this record that it was the intention of the grantors and Charles T. Holmes to deed the property to Hazel L. Holmes. It is also alleged in the complaint. It is so stipulated in the evidence. Metzger testified that when Holmes delivered the deed to him he said "I am giving the property to Hazel." Chezik, with whom Holmes consulted about the heating plant, testified,

that Holmes said: "I am making a deal for the property and am going to give it to the kid." Donovan said he had a conversation with Holmes October, 1930 and "He told me he had taken the property over from Mr. Carter for Hazel, his daughter." The execution of the deed and the delivery of the deed to Holmes in these circumstances was a delivery to a third person for the grantee and vests the title in the grantee.

"In the case of a deed which is a voluntary settlement, the law presumes much more in favor of a delivery than in ordinary cases of deeds of bargain and sale, and this presumption is especially strong when the grantee is an infant. As to such a deed the presumption is in favor of delivery, and the burden of proof is on one claiming adversely to show that there was no delivery. A deed made as a voluntary settlement may be effective to vest title in the grantee, although it is retained by the grantor in his possession until his death, if other circumstances do not show an intention contrary to that expressed on the face of the deed. The grantor may deliver the deed either to the grantee or to a stranger for his use, and an acceptance by the grantee will be presumed from the fact that the deed is for his benefit, especially if the grantee is an infant." 1 Jones, Ev. page 323, § 193. In the instant case the deed was delivered by the grantors to Holmes for Hazel's benefit and that was a good delivery.

The only question remaining is whether this was a transfer with intent to defraud creditors. Section 7220, Compiled Laws, 1913, reads as follows: "Every transfer of property or charge thereon made, every obligation incurred and every judicial proceeding taken with intent to delay or defraud any creditor or other person of his demands is void against all creditors of the debtor and their successors in interest and against any persons upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

Under § 7223, Compiled Laws 1913, the question of "fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration."

In the case of Dalrymple v. Security Loan & T. Co. 9 N. D. 306, 83 N. W. 245, the father, upon a consideration made by him, caused a deed conveying real estate, to be made to D. in trust for the sole use

and benefit of his children. The father was in debt at the time, and certain creditors had obtained and docketed judgments against him, *held*, "that such facts alone, in the absence of allegations of the father's insolvency, or of a fraudulent intent upon the part of the father, do not show that such transfer of real estate was necessarily fraudulent. . . . A fraudulent intent in the transfer of real estate must be made to appear in order to justify a court in setting the conveyance aside. . . ."

In Merchants Nat. Bank v. Armstrong, 54 N. D. 35, 208 N. W. 847, this court held that a fraudulent intent is essential to avoid a transfer under § 7220, Compiled Laws 1913, must be established as a matter of fact under § 7223, Compiled Laws 1913 and the burden is upon the parties attacking the transfer to establish such intent. Where a transaction which is challenged for fraud is between relatives that fact alone is not sufficient to justify a finding of fraud, but such a transaction between relatives should be more closely scrutinized than where no relationship exists.

In the instant case the complaint does allege a fraudulent intention, but there is no evidence showing any fraudulent intent. The plaintiff relies upon the stipulation that at the time of the transfer the defendant was indebted to the plaintiff, but this is not sufficient. In the Dalrymple case the father was indebted and judgments had been obtained and docketed against him but such facts standing alone did not prove fraudulent conveyance. There is no evidence in the instant case showing that at the time of the transfer Holmes was not able to take care of all of his liabilities; no evidence that he was insolvent at the time. The only liability mentioned is a lawsuit, which later resulted in a judgment of $5,575.79. Holmes died in November, 1931 and left an estate in Burke county inventoried and appraised in May, 1932 at $10,586.22. It is a matter of common knowledge that because of the world-wide depression the property would be worth a great deal more on November 6, 1930, than it was in May 1932. It was also stipulated that he left an estate of $4,522.55 in the state of Michigan, against which there was a claim of $26,520.33, $26,000 of this claim is for unliquidated damages, based upon an alleged automobile accident. The instant case was tried in January 1933. Holmes died in 1931 and apparently the action for damages had not been tried

at the time of the trial of the instant case in 1933. There is nothing to show where or when the accident happened, or where the action is pending, or whether the right of action thereon survived, but it is clear from the entire record that there is no evidence which proves a fraudulent intention to defraud creditors at the time of the transfer in the instant case.

The judgment is reversed and the action is ordered dismissed with costs to the defendant.

BURR, Ch. J., and NUESSLE, CHRISTIANSON and MOELLRING, JJ., concur.