Carrie SCHRANK, Plaintiff and Respondent,

v.

Marie MEADE, Barbara Card, Blanche Dachel, Rosa Bozonich, Annie Ripperger, Joseph Uhler, and all other unknown persons claiming an interest in or encumbrance upon the property described in the complaint, Defendants and Respondents,

James Uhler, Jr., Defendant and Appellant.

No. 8261.

Supreme Court of North Dakota.

Oct. 13, 1966.

Lyle G. Stuart, Hettinger, for plaintiff and respondent.

T. L. Secrest, Hettinger, Wolf, Glaser & Milhollan, Bismarck, of counsel, for defendant and appellant.

TEIGEN, Chief Justice (On reassignment).

This is an appeal by the defendant, James Uhler, Jr., from a judgment determining that fee title to certain lands is vested equally in seven persons, including the plaintiff and the appealing defendant, and ordering a sale thereof in partition. It is the contention of the defendant who takes this appeal that he is the owner in fee simple of part of the lands involved in the action. The case was tried to the court. A trial de novo is demanded in this Court.

The action was brought by the plaintiff for the partition of 520 acres of real estate. The plaintiff alleges that she is the owner of an undivided one-seventh interest therein, that the defendant James Uhler, Jr., Marie Meade, Barbara Card, Blanche Dachel, Rosa Bozonich, and Annie Ripperger each own an undivided one-seventh interest, and that the said persons acquired the same by final decree of distribution and under the terms of the last will and testament of their father, James Uhler, Sr.

The appealing defendant, James Uhler, Jr., in his answer and counterclaim alleges in substance that he is the sole owner of 200 acres of the 520 acres described in the complaint, which 200 acres was included in the probate of his father's estate by mistake. He prays judgment quieting title in him as to the said 200 acres.

The plaintiff replied to the counterclaim, alleging in substance that if the said James Uhler, Jr., received a conveyance of the said 200 acres, he held it in trust for the use and benefit of his father, James Uhler, Sr., who paid the consideration therefor. The reply also alleges adverse possession under the final decree of distribution, payment of taxes for more than ten years, and estoppel.

Issue was joined only as to the 200 acres of land claimed by James Uhler, Jr.

James Uhler, Sr., died testate in 1948. His will was admitted to probate and final decree of distribution was entered on February 19, 1953. James Uhler, Jr., who is the appellant here, was the administrator with the will annexed of his father's estate. The 520 acres described in the plaintiff's complaint was inventoried and distributed by the final decree of distribution as part of the corpus of the father's estate.

It appears that the 200 acres in issue was owned by the State of North Dakota. The father, James Uhler, Sr., in 1930 negotiated, through the First State Bank of Reeder as his agent, for the purchase of the land from the State of North Dakota. A letter dated January 10, 1930, from the First State Bank of Reeder directed to the State Land Department of the State of North Dakota, enclosed a draft for the purchase price, and in part stated, "Kindly make deed in favor of James Uhler, Jr., and mail us for delivery."

A letter from the State Land Commissioner of North Dakota directed to the First State Bank of Reeder, dated March 12, 1930, acknowledged the letter of January 10, 1930, and stated in part, "We are enclosing the quitclaim deed, abstract of title, mortgage papers in connection with the state loan, which was foreclosed and now quitclaimed to James Uhler, Jr." The quitclaim deed was never recorded in the office of the register of deeds; however, a certified copy thereof was obtained from the State Land Department and placed on record in the office of the register of deeds September 20, 1946, over 16 years after the issuance of the deed. The deed certified was dated March 11, 1930. This certified copy of the quitclaim deed is in evidence. It was on a regular printed form and had the blank spaces filled in by typewriter. The grantee's name was typewritten "James Uhler"; however, it shows a strikeover was made by pen on the typed abbreviation following the name "James Uhler," to make it read "Sr." There was also introduced in evidence another certified copy of the same quitclaim deed certified by the State Land Commission of North Dakota on December 17, 1963, as recorded in the quitclaim deed record contained in the office of the State Land Department. It is identical with the certified copy which had been placed on record except that following the name of grantee "James Uhler" there appears the abbreviation "Jr." The second certified copy contains no alterations or strikeovers. There were also introduced in evidence two letters from the father, James Uhler, Sr., directed to the appealing defendant, James Uhler, Jr. Both are dated in March 1946. One is written in the father's handwriting and the other is typewritten. Both letters contain the same message which, in summary, is that the father has a chance to

sell the "land in your name" and state that there is being forwarded to him a deed for his signature and the signature of his wife. The letters request that he and his wife sign the deeds, have their signatures acknowledged, and that they then be returned. One of these letters states that he has a chance to sell the farm for $6,000, and "I will give you one thousen dolars." The other states, "You will get one thousand dollars out of the deal." It appears that the deed was not signed or returned and that the land was not sold.

The appealing defendant also testified that his father and his mother told him in 1930 that the land had been placed in his name. However, at the time of the probate of his father's estate, he was of the impression that his father had caused the title to the land to be changed back into his father's name in some way unknown to him. He said that he did not investigate until after the present action was commenced, at which time he consulted with an attorney at Milwaukee, Wisconsin, where he then resided. Subsequent thereto he answered the complaint and counterclaimed.

James Uhler, Jr., admits that his father paid the consideration and negotiated for the repurchase of the land from the State of North Dakota in 1930. At that time James Uhler, Jr., was 21 years of age. Although he lived in Wisconsin, he returned to his father's farm each summer and assisted him in farming. This continued until he was 25 years of age. It also appears that James Uhler, Jr., has not attempted to exercise any control over the land at issue except during the time that he was administrator of his father's estate and for several years thereafter. The county records show that he paid five years' taxes after the estate was closed, but that commencing in 1957 and continuing until the date of the trial the taxes were paid by the defendant Mary Meade. The land has been farmed by Joseph Uhler since James Uhler, Sr., died. He is a brother of the litigants

but not named as a devisee in his father's will. There were thirteen children but only seven were named as devisees. The appealing defendant, James Uhler, Jr., also testified that he at one time made a request to be appointed as agent to handle the land, but that his request was refused. We assume this is the reason he ceased paying taxes and that Mary Meade then assumed supervision of the farming operations and thus paid the taxes. There is no contention that taxes were paid from personal funds.

 We have carefully examined the record and find the evidence clear, strong, and convincing that the certified copy of the quitclaim deed received from the State of North Dakota was altered after its execution and delivery and before recording in the office of the register of deeds. The defendant has sustained the burden of proof in this respect and we find, as did the trial court, that the original quitclaim deed conveyed the property to James Uhler, Jr. Riley v. Riley, 9 N.D. 580, 84 N.W. 347; Hunt v. Holmes, 64 N.D. 389, 252 N.W. 376.

The question arises, was there a completed gift inter vivos or was a resulting trust created?

 The trial court found that a resulting trust was created, and with this result we agree.

Section 59-01-05, N.D.C.C., provides that:

An implied trust is one which is created by operation of law.

An implied trust may be either a constructive trust or a resulting trust. A resulting trust is a creature of equity, and is based on the equitable doctrine concerning consideration, the doctrine that valuable consideration and not legal title determines the equitable title of interest. One type of such trust is where a purchase is made and the consideration paid by one party but the legal title conveyed to another.

Section 59–01–06, N.D.C.C.:

\* \* \* \* \* \*

4. When a transfer of real property is made to one person and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made.

In Fox v. Fox, 56 N.D. 899, 219 N.W. 784, 788, we held that a resulting trust in land may be established by parole evidence.

In Shong v. Farmers & Merchants' State Bank, N.D., 70 N.W.2d 907–911, we held that the expression and conduct of the parties might be considered in determining whether there existed an intention to create a trust relationship. None of the facts in that case gave rise to a resulting trust.

In Van Sickle v. Olsen, N.D., 92 N.W.2d 777, we held that where a group of ten men each contributed toward the purchase of oil royalties and the title thereto was taken in the name of one of them, there was a resulting trust.

In Shong v. Farmers & Merchants' State Bank, supra, we also held that a resulting trust does not depend upon contract. It arises by operation of law, is not affected by the statute of frauds, and whether a resulting trust is created is primarily a question of intention.

On the other hand, the rule has been laid down that if a father or parent pays the consideration and has the conveyance run to his child, there is a rebuttable presumption of a gift.

Shong v. Farmers & Merchants' State Bank, supra.

In re Kaspari's Estate, N.D., 71 N.W.2d 558, we held that where a claim of a gift is not asserted until after the death of the alleged donor, the evidence must be clear and convincing of every element requisite to constitute a gift.

We also said that to constitute a valid gift inter vivos there must be an intention on the part of the donor to then and there transfer title to the property to the donee.

Here we have a difficult situation in that the father, James Uhler, Sr., is deceased. His testimony is no longer available to show his intent at the time the property was purchased.

In Reel v. Hansboro State Bank, 52 N.D. 182, 201 N.W. 861, we said if a gift be imperfect and something remains to be done by the donor to effect an intention to make a gift or create a trust, a court of equity leaves the parties where it finds them. It would not aid in completing an incomplete transaction or enforcing that which rests only in an unexecuted intention.

The bare fact that a quitclaim deed was issued by the State of North Dakota to the defendant James Uhler, Jr., at the request of the Bank which was acting as the agent of James Uhler, Sr., and thereafter was delivered on its receipt to James Uhler, Sr., who did not deliver it to the named grantee nor have it recorded, and who 16 years later obtained a certified copy of said deed and caused it to be recorded but only after the abbreviation "Jr." had been changed to "Sr.," is of little, if any, evidentiary value that he intended to make a gift at any time. The defendant, James Uhler, Jr., testified that his father and his mother had told him the land was in his name, but he did not testify that either of his parents had told him that they had made a gift of it to him. The father, James Uhler, Sr., exercised full control of the land during his lifetime. Upon his death, James Uhler, Jr., as administrator with the will annexed, caused it to be inventoried as a part of the assets of his father's estate. Shortly after the estate was closed, he relinquished all control over the land, and it was looked after by his sister. At no time had he made any claim for more than an undivided one-seventh interest in the landlord's proceeds. There is no evidence that James Uhler, Sr., was in any manner indebted to his son James Uhler, Jr., nor is there any showing

that James Uhler, Jr., has made any claim of any kind until this partition action was instituted, some 33 years after his father purchased the land from the State of North Dakota.

█ We have carefully reviewed this record and find no evidence of any kind showing that there was an intent on the part of James Uhler, Sr., to make a gift. We think the letters written by the father to his son in 1946 indicate opposite intent.

We believe that the evidence presented in this case constitutes more than a preponderance of evidence and is sufficient to overthrow the presumption in favor of the plaintiff's title. The proof is clear, specific and satisfactory.

The trial court saw and heard the witnesses who testified. Under such circumstances the trial court's findings are entitled to appreciable weight. The evidence is clear that James Uhler, Sr., bought the lands in question from the State of North Dakota for himself, but does not establish the reason for the title being placed in James Uhler, Jr. It is possible it resulted from error on the part of the First State Bank of Reeder. It appears clear following the receipt of the deed by James Uhler, Sr., that his actions were such as to be wholly inconsistent with the idea that he intended or consummated a gift.

For reasons aforesaid, we affirm the judgment.

STRUTZ, ERICKSTAD and KNUDSON, JJ., concur.

MURRAY, J., not being a member of the Court at the time of submission of this case, did not participate.