## UNITED STATES v. BEEBE.

1. EVIDENCE: CONFESSIONS. A witness called by the prosecution to prove certain confessions of the accused, upon an inquiry preliminary to his examination in chief, testified that no inducements, threats or promises were made to the accused. Defendant did not cross-examine, or offer any contradictory evidence upon this point. Upon the conclusion of such preliminary examination no objection or exception to the admissibility of the confession was entered by defendant, and the regular cross-examination left the point in the same condition: *Held*, that the evidence was properly received, and a motion to strike out was properly denied.

2. CONFESSIONS: IDENTITY OF FOR JURY. Certain voluntary declarations of defendant were admitted in evidence. The Court expressly charged the jury to disregard all admissions and confessions which were not legally identified, and that such identification means, that the jury must be satisfied from the evidence that such confessions and admissions relate to the killing of the deceased: *Held*, not error.

3. EVIDENCE: DOCUMENTARY: MAPS, ETC. Certain books, maps and reports printed and published at the Government Printing Office, Washington: *Held*, properly admitted in evidence, affirming the decision of this court in *United States v. McCall*, 1 Dak., 320.

4. JURISDICTION: SIOUX INDIAN RESERVATION. The *locus in quo* being within the Sioux Indian Reservation on the east side of the Missouri River, as recognized by the Treaty of April 29, 1869: *Held*, that the court had jurisdiction of the offense charged.

5. TRIAL OF UNITED STATES CAUSES: SELECTION OF GRAND AND PETIT JURIES FOR: COMMON LAW. The Legislative Assembly of this Territory has made no provision for the selection and drawing of jurors to serve in the District Courts

sitting for the trial of causes arising under the constitution and laws of the United States; and in the absence of such provision the rule of the common law must prevail.

6. ACT OF CONGRESS, APPROVED JUNE 30 1879: NOT APPLICABLE. The Act of Congress, approved June 30. 1879, so far as it relates to the drawing of jurors, only embraces courts of the United States in the States of the Union, and is not applicable to this Territory.

7. POWER TO CALL GRAND AND PETIT JURIES: ARISES BY IMPLICATION. In the absence of any competent legislative authority therefor, the power of the District Courts of the Territory sitting for the trial of United States causes, to direct and bring in grand and petit juries, results by necessary implication from the laws of Congress conferring jurisdiction of such causes.

8. GRAND JURIES: FROM BODY OF DISTRICT. The powers of grand juries are co-extensive with the criminal jurisdiction of the courts of which they are an appendage, and they should be taken from the body of the district, and not exclusively from the county in which the court sits; and so with regard to petit juries.

9. DISTRICT COURTS OF TERRITORY: NOT UNITED STATES COURTS: HAVE POWERS OF: INDICTMENT IN. The District Courts of the Territory are not Circuit and District Courts of the United States; but they are courts of the Territory invested for some purposes, *with the powers* of courts of the United States; and an indictment is sufficient if it appears therefrom that it is entitled in a court having authority to receive it; the indictment in this cause held sufficient.

10. JUDICIAL NOTICE: OF WHAT MATTERS: NEED NOT BE PROVED. The boundaries of the Territory, its divisions into judicial districts, the limits of such divisions, leading places and geographical features of the land within such limits, leading cities, villages and public places therein, Indian Reservations, leading public proclamations affecting matters relative to their jurisdiction, embracing executive decrees, orders and ordinances of state, are matters of which the courts will take judicial cognizance, and when published in authentic public documents they need not be proved.

*Writ of Error to the District Court of Yankton County, Second Judicial District.*

THE defendant, Beebe, in company with W. H. Williams, George H. Cammack, and George Landphere, the deceased, on July 4th, 1879, were traveling with a team and wagon on their way from Beloit, Iowa, to Brule City, Dakota. It was alleged by the prosecution that the defendant on that day, at a place near Crow Creek, in the Sioux Indian Reservation, in the presence of Cammack and Williams, shot and killed the deceased while he was lying asleep in camp. The body of the deceased was found

near the place of the alleged homicide.    Beebe, Williams and
Cammack arrived at Brule City on the 6th day of July without
Landphere, and there took dinner at the house of Mr. Van Meter.
Upon the trial three witnesses were called by the prosecution, who
testified, under objection of the defendant, that while eating din-
ner at Van Meter's house that day, Williams and Cammack not
being present at the time, the defendant stated in substance, " that
in coming over from Beloit to Brule City they had a tussle with
some horse thieves; that he shot at two of them, and shot one
twice ; that they put one out of the way where he wouldn't steal
any more horses; and that two of the horse thieves came to the
wounded one and carried him away."    The admission of this evi-
dence is covered by the third assignment of error in this case.
The other facts material to the case as presented in this court, are
fully stated in the opinion.


*Dewey & French*, for plaintiff in error.

*Hugh J. Campbell*, United States Attorney, for defendant in error.

No briefs on file.


SHANNON, C. J.—Silas Frank Beebe was indicted in the court
below for the murder of George Landphere, and was convicted of
that crime and sentenced.

In the indictment it is charged that the offense was committed
on the fourth day of July, 1879, " at a place near the Crow Creek
Indian Agency in the Indian country, in a place and district of
country under the exclusive jurisdiction of the United States, in
the said Second Judicial District and Territory of Dakota, and
within the jurisdiction of this court."

No exception whatever was taken to the charge of the Court to
the jury.    In fact, all exceptions taken during the course of the
trial were abandoned by the counsel for the defense, except the
following, which alone are set forth in the assignment of errors :

" I.    The Court erred in allowing Marvin H. Somers to testify

to an alleged confession of the defendant, Beebe, for the reason that it was not sufficiently shown, as a preliminary, that such alleged confession was voluntary.

"II. The Court erred in overruling the motion of the defendant to exclude from the jury the testimony of said Marvin H. Somers touching an alleged confession of the defendant, for the reason that said Somers did not recollect. and could not and did not testify to all that was said by the defendant on the subject at the time of making the alleged confession.

"III. The Court erred in allowing Fred Hemingway, Viola Bentley and Jane VanMeter, witnesses sworn and examined on the part of the United States, to testify as to certain alleged admissions and statements of the defendant, to such persons alleged to have been made, for the reason that such alleged admissions and statements were not of the offense charged in the indictment.

"IV. The Court erred in admitting, as against the defendant's objection, the documentary testimony offered and presented by the United States attorney, for the reason that such testimony was incompetent, irrelevant and not the best evidence to establish certain facts pertinent to the case.

"V. The Court erred in overruling the defendant's motion that the Court instruct the jury to return a verdict of not guilty upon all the counts in the indictment, for the reason that the prosecution had not shown that the Court had jurisdiction of the offense charged in the indictment.

"VI. The jury finding the verdict of guilty against the defendant was not a legal body, for the reason that it was not selected, drawn and summoned as required by law.

"VII. The Court erred in overruling the defendant's motion for a new trial in said action, for reasons apparent on the face of said motion.

"VIII. The Court erred in overruling the defendant's motion in arrest of judgment in said action, for reasons apparent on the face of said motion.

"The defendant, therefore, for the errors above assigned, hereby prays the honorable Court for a reversal of the judgment heretofore entered against him in the above entitled action."

As to the first and second assignments, it is to be observed that the witness, Marvin H. Somers, was first interrogated as to any threats or promises made to the accused. He asserted that none were made; and that no hope was held out to him, "by way either of inducement or of fear." On this preliminary inquiry the defense did not, at the time, cross-examine or offer any contradictory evidence.

After the confession was elicited and at the conclusion of the examination in chief, the defendant's counsel made a motion to strike out the evidence, which was refused and an exception taken. In the record before us, no exception, at the time and just after the preliminary examination, appears as to the admissibility of the confession; and there was nothing to show but that it was voluntary, and without fear or hope. The regular cross-examination left the point in the same condition. No error is perceived in the refusal of the Court to strike out, or exclude from the jury, the evidence of that witness; and this is especially made manifest when the unusually liberal instructions to the jury, on the subject of confessions, are fully considered. On this point the counsel of defendant presented four propositions to the Court, which were all given to the jury without any alteration.

As to the third assignment, it has relation to certain statements made by the accused to the three witnesses named, shortly after the homicide. After close scrutiny, we can find no error in this. His voluntary declarations could not be excluded; and it was left to the jury whether or not they had reference to the crime committed and to the guilt of the defendant.

The Court expressly charged the jury to "disregard all admissions and confessions which are not legally identified," and that such "identification means, that *the jury* must be satisfied from the *evidence*, that such confessions and admissions relate to the killing of the deceased, Landphere, and the guilt of the accused, Beebe." And it was so charged in the very words of defendant's counsel; and this was immediately followed by the further instruction, that "all reasonable doubts must be resolved in favor of the accused." The evidence was legally received and its character and weight were properly left to the jury.

The documentary testimony referred to in the fourth assignment of errors, is, mostly, of the exact nature and kind detailed in the case of *McCall v. the United States*, 1 Dakota R., 230. It relates to certain books, reports and maps, printed and published at the city of Washington, at the government printing office, offered by the prosecution to show the jurisdiction of the Court over the *locus in quo* as being Indian country. It includes the executive order or proclamation of President Grant, dated January 11th, 1875, making an addition to the Sioux Indian Reservation. It also embraces a number of maps from the office of the Surveyor General of Dakota, in connection with the testimony of E. F. Higbee, Capt. Dougherty, Wm. H. H. Beadle, and Newton Edmunds.

We have already and carefully gone over the grounds in regard to this class of evidence, in the case above referred to, and we can now see no reason to change our determination. There was no error in admitting the executive order, nor was there any in receiving the maps from the Surveyor General's office.

The fifth assignment can be briefly disposed of by stating, that there was abundant and undoubted evidence to show that the Court had jurisdiction over the place where the crime was committed. To have granted such motion, and to have so instructed the jury, would have been a violation of duty and of law.

The evidence on this subject was not confined merely to the executive orders of Presidents Grant and Hayes in 1875 and 1879; but it was also extended to show the original formation of the old Winnebago and Sioux Indian Reservations on the east side of the Missouri river, in the latter of which the crime was shown to have been committed. By the treaty of April 29, 1868 (ratified February 16, 1869,) it was admitted, by both parties, that there were, at that date, " existing reservations on the east bank of the river," all of which were thereby fixed as additions to the main reservation on the west side of the river. The evidence tended to prove the surveying and platting of the small reservations above named as early as 1863, as well as the continued existence of the Crow Creek Reservation and Agency from 1865 until the date of the trial and afterwards. The latter is named on the maps as the Sioux Indian Reservation.

United States v. Beebe.

It is asserted in the sixth assignment that the jury was not a legal body, for the reason that it was not selected, drawn and summoned as required by law.

It appears that the panels both of the grand and petit juries, was summoned, as usual, by "open venire;" that is to say that the Marshal of the United States for the Territory *selected* and summoned them, as at common law. It is contended that this mode of selection of juries in the District Court for the entire district, is contrary to law, and in opposition both to the territorial and United States Statutes. The answer to this is, that the Legislative Assembly of the Territory has never provided for the selection and drawing of jurors to serve in such court, and in the absence of a statute making such provision, the rule of the common law must prevail. The Legislature has contented itself with enactments regulating juries in the District Courts of counties and sub-divisions, but it has, perhaps wisely, gone no further.

And again, the act of Congress approved June 30, 1879 (four days before this homicide) in so far as it relates to the drawing of jurors, is not applicable to the Territory. That act only embraces courts of the United States in the States of the Union. Territories are not mentioned in it, but " *boxes used by the State authorities,*" are specified. From the first organization of courts in Dakota, sitting as courts of a district, the universal practice has been such as is now complained of. Moreover, according to the Constitution (Article V. of Amendments,) as to a case like this, no person can be held to answer, unless on a presentment or indictment of a grand jury; nor can he be deprived of life, liberty, or property, without due process of law. What is meant by the words " due process of law," is adequately explained in the case of *The People v. Sponsler*, 1 Dakota Rep., page 298. The Supreme and District Courts of the Territory possess *common law* jurisdiction and authority for redress of all wrongs committed against the Constitution or laws of the United States, or of the Territory, affecting persons or property. And possessing such jurisdiction, the procedure, practice and pleadings must be as at common law, *unless* the common law methods have been changed, modified or abrogated by sufficient legislative authority. And this is what is sub-

stantially declared in section 610 of the Code of Criminal Procedure.

The marshal is a ministerial officer, whose duties are similar, in each judicial district, to those of a sheriff in a county. The *venire*, which is a judicial writ, must, in a court for the whole district, be directed to the United States Marshal. It requires him to cause a certain number of qualified persons of the district, to appear in court at a specified time; to serve as jurors in said court. Now, by the common law, grand jurors were returned by the sheriff, or proper officer, without the nomination of any person whatsoever. (1 Chitty's Cr. Law, 310, 311, 312; also 4th Blackstone's Comm., 301. 302–7.) The laws of Congress have invested each of the three District Courts of the Territory with certain criminal jurisdictions; and since this jurisdiction can only be exercised, as to capital or otherwise infamous crimes, through the instrumentality of *grand juries* the power to direct them, and to bring them in, results by necessary implication. The powers of grand juries are co-extensive with the criminal jurisdiction of the courts of which they are an appendage. (See section 71 of Code of Criminal Procedure.) And they should be taken from the body of the district, and not exclusively from the county in which the court sits; and so with regard to the petit jurors.

At common law, the venire for the petit jurors was in substance the same as for the grand jury. It was to the sheriff, and by him executed and returnable. (3 Blackstone's Comm., 352, 355.) It was the boast of the common law that *"the person returning the jurors is a man of some fortune and consequence; that so he may be not only the less tempted to commit willful errors, but likewise be responsible for the faults of either himself or his officers; and he is also bound by the obligation of an oath faithfully to execute his duty."* (3 Blk. Comm., 354–5.) And a panel of jurors for the trial of criminal causes, was obtained in a similar manner. (4 Blk. Comm., 350.) (See also 1 Chitty Crim. Law 505–515.) It is also worthy of observation, that this common law mode of obtaining juries to serve in the United States Courts in Pennsylvania, prevailed in that State, with the express sanction of Congress, until the passage of the act of June 30, 1879, above referred to.

We come to examine the seventh and eighth assignments of error. Exceptions to the denying of these motions were duly taken, and form part of the record.

In the motion for arrest of judgment, six reasons are specified, among which are that " it does not appear from the indictment herein that the same was presented in a court having jurisdiction of the offense charged." Third, " because said indictment does not allege a place where the offense therein charged was committed, within the jurisdiction of this court." And fifth because the grand jury which found and presented the indictment, was not selected, drawn and summoned as required by law."

This last proposition has already been disposed of.

As such motion in arrest is usually founded on demurrable defects in the indictment, it is here proper to state that there was a regular demurrer to the indictment, which was overruled, and an exception taken. The grounds specified in the demurrer were almost identical with those above stated as contained in the motion to arrest. There is, however, this additional specification, to-wit: "Because said indictment alleges that this court is exercising the jurisdictions of a United States Circuit Court, and a United States District Court, which cannot both be exercised by this court in this case."

The caption and commencement of the indictment are as follows:

" THE UNITED STATES OF AMERICA, ⎫
       TERRITORY OF DAKOTA,      ⎬ ss.
         SECOND JUDICIAL DISTRICT. ⎭

" In the District Court in and for the said Second Judicial District and Territory of Dakota having and exercising the jurisdiction of a United States Circuit and District Court.

" THE UNITED STATES   ⎫      November Term, 1879.
       v.           ⎬
   SILAS FRANK BEEBE  ⎭       *Indictment for Murder.*

" The grand jurors of the United States, in and for the said Second Judicial District and Territory of Dakota, inquiring in and for the body of said district of all crimes and public offenses against the laws of the United States, committed and triable in said dis-

trict, having first been duly and legally empanneled, charged and sworn upon their oaths present," etc.

Some of the courts in this country do not recognize the distinction between "caption" and "commencement," both being by them, called "caption." It is no part of the indictment itself, and was originally only a copy of the style of the court at which the indictment was found. By the strictest rule of the common law, the caption was deemed sufficient, if it described, with reasonable certainty, the court before which the indictment was found, the time and place where it was found, and the jurors by whom it was found. Both the caption and the commencement are purely formal, and they may be amended, if faulty, by the record, in the proper manner.

The sole objection as to this point is, that the indictment, in its caption, alleges that the court is exercising the jurisdictions of a United States Circuit and District Court, which cannot both be exercised by the court in this case, and that the indictment was not presented in a court having jurisdiction.

The Territory is divided into three judicial districts, in each of which a District Court is held for the hearing and determining of all matters and causes in which the United States is a party. In the local courts of the counties or subdivisions within any district, no case in which the United States is a party can be heard and determined. (Rev. Stats. of U. S., sections 1865 and 1874.) By section 1910, it is declared that each of these three courts "shall have and exercise the same jurisdiction, in all cases arising under the Constitution and laws of the United States, as is vested in the Circuit and District Courts of the United States."

By section 2145, the general laws of the United States as to crimes, with a few certain exceptions, were extended to the Indian country, and among these, of course, the crime of murder. Thus, as to the punishment of crimes committed in the Indian country, sole and exclusive jurisdiction remains with the United States. This extension of jurisdiction over the Indian country, enacted by Congress possessing the sovereign power, cannot be taken away, nor can the Act of Congress be repealed, by any Territorial Legislature. Over the Indian country the general criminal laws of the

United States are paramount.    They operate there just as in any other place within the sole and exclusive jurisdiction of the Federal government.    As was said in the case of the *United States ex rel Scott*, (1 Dak. Rep., 146,) "criminal cases in this Territory are of two classes—*first*, those that arise under the local or territorial laws ; *secondly*, those that arise under the general criminal laws of the United States."

Congress has sufficiently styled or designated the court below : It is The District Court of the Second Judicial District ; or in and for that district.

According to section 1865, "a *district court*" shall be held *in* each *district* of *the Territory*, by one of the Justices of the Supreme Court." In this regard, the caption of the indictment is accurate, but the remaining words are objected to.    But it is quite true that as to the *quantum* of jurisdiction possessed by the court, there is nothing false in the further statement.    Section 1910 settles all question.    In all cases arising under Federal laws, the court below has and exercises the combined or consolidated jurisdiction of the Circuit and District Courts of the United States, in so far as such jurisdiction is at all applicable to a Territory.

The District Courts of the United States have jurisdiction in at least eighteen specified classes of cases.    (Rev. Stats., Chapter 3, Title 13.)    And so with the Circuit Courts, in twenty classes. (Rev. Stats., Chapter 7, Title 13.)    Congress without all this lengthy enumeration, and for the sake of brevity, and as to all Federal cases arising in the Territory, vested in the District Court below all and singular the jurisdictions possessed by both the other courts—not, however, to be exercised in any separate manner, nor so as to have two courts with different names.    There was no such intention.    Each district must have a District Court for itself, and that one court has all the powers which, in bulk, and so far as applicable, have been conferred upon it.

By the enactment of section 1910, the District Courts of the Territory were not made Circuit and District Courts of the United States.    And this the Supreme Court of the United States has often decided.    But they are courts of the Territory, invested for some purposes *with the powers* of the courts of the United States.

(*Reynolds v. United States*, 8 Otto, 154.) These views are enhanced on consideration of the Act of Congress, approved March 3d, 1879, creating an additional district. (U. S. Stats., Vol. 20, p. 473.) The District Court of the Fourth Judicial District, unlike the others, has no jurisdiction to try a cause in which the United States is a party, neither can it summon a United States grand or petit jury. The others have such jurisdiction, and can summon such juries. Two classes of courts are created in the Federal system for the exercise of the necessary original jurisdiction, but in the Territory there is but one class of courts created for that purpose. Therefore, the jurisdiction of each of the three Territorial District Courts within the respective districts, is made co-extensive with that of both the Federal Courts. (*United States ex rel James Scott v. Burdick*, 1 Dak. Rep., 146; *The City of Panama*, 11 Otto, 456.)

The words in the caption, to-wit, "having and exercising the jurisdiction of a United States Circuit and District Court," might, perhaps, be viewed as surplusage, because without them the style of the court is sufficiently described. Under the Code of Criminal Procedure an indictment must contain "the title of the action, specifying the *name of the court* to which the indictment is presented, and the names of the parties." And it "is sufficient if it *can be understood* therefrom, that it is entitled in a court having authority to receive it, though the *name of the court be not stated.*" (Code of Crim. Proc., sections 214 and 222.) Moreover, section 223 of same Code, and section 1025 of Revised Statutes of the United States are in substantial agreement, in regard to the sufficiency of an indictment. By the former it is enacted that "no indictment is insufficient, nor can the trial, judgment, or other proceedings *thereon* be affected, by reason of a defect or imperfection in matter of form, which does not tend to the prejudice of the substantial rights of the defendant upon the merits." (See also section 537 of Code of Criminal Procedure; also *State v. McCarty*, 2 Pinney's Wis. Rep., 513.)

But, again, the business of the District Courts, "when acting as Circuit and District Courts of the United States, is to be kept distinct from their business as ordinary courts of the Territory." (*Snow v. United States*, 18 Wall., 320.) From this it would follow

that the designation of jurisdiction in the caption, serves more particularly to show the separation between government and territorial cases.

In the indictment it is charged that the crime was committed " at a place near the Crow Creek Indian Agency, in the Indian country, in a place and district of country under the exclusive jurisdiction of the United States, in the said Second Judicial District and Territory of Dakota, and within the jurisdiction of this court."

The place of the commission of the offense is sufficiently alleged. Statutes prescribing the boundaries of the Territory and its division into judicial districts, are public acts which the courts are bound to know, and of which they will take judicial notice. The limits of such divisions are, therefore, of judicial cognizance. And so with regard to leading places and the geographical features of the land within such limits, as also with regard to the location and position of leading cities, villages, and public places therein. The Crow Creek Indian Agency was and is a place within the Second Judicial District, well known to the public, and frequently mentioned in Acts of Congress. A court will, likewise, take judicial notice of Indian Reservations, and of leading public proclamations affecting matters relative to its jurisdiction. And this embraces executive decrees, orders, and ordinances of state, and when these are issued in authentic public documents they need not be proved.

We come, consequently, and for the various reasons stated, to the conclusion that there was no error in overruling the demurrer, and none in denying the motion in arrest of judgment. The Court was also right in the denial of the motion for a new trial.

The judgment of the said District Court must be affirmed, and the record remitted, with an order that the said judgment therein rendered be duly executed.

All the Justices concurring.