(70 N. W. Rep. 279.)

---

WILLIAM F. KREUGER *vs.* HELMUTH SCHULTZ.

Opinion filed December 28th, 1896.

**Adverse Possession—Lands in Indian Country.**

> There can exist no "adverse possession" of lands, in a private party, while such lands are a portion of the "Indian country," and the right of occupancy in the Indians has not been terminated by the United States.  •

**Possession Under Claim of Title.**

> Sec. 3303, Comp. Laws, declaring every grant of real property void "if at the time of the delivery thereof such real property is in the actual possession of a person claiming under a title adverse to that of the grantor," has no application where the party in possession relies only upon naked possession, which, upon his own showing, has not continued for sufficient time to ripen into title by prescription under the statute.  The possession must be by one claiming under a title.

**Judicial Notice.**

> Courts will take judicial notice that certain described lands were within the "Indian country" and of the date when the Indian right of occupancy was terminated by the general government by treaty.

Appeal from District Court, Ransom County; *Lauder,* J.

Action by William F. Kreuger against Helmuth Schultz.  Judment for plaintiff.  Defendant appeals.

Affirmed.

*Mitchell & Gram,* and *P. H. Rourke,* for plaintiff.

*J. E. Robinson,* and *B. F. Spalding,* for defendant.

BARTHOLOMEW, J.  This was an action in ejectment for a tract of land in Ransom County.  The land is within the limits of the original grant made by congress to the Northern Pacific Railroad Company on July 2, 1864, and is in one of the old sections covered by the grant.  Plaintiff claims title through *mesne* convey-

ances from the railroad company. Defendant claims title by reason of adverse possession, and upon no other ground whatever. Among the instructions given by the court to the jury was the following: "You are further instructed, gentlemen, that unless the jury are satisfied that the defendant was in effective adverse possession of the premises in controversy for the full period of twenty years next prior to the 31st day of October, 1889, the date of the commencement of this action, you must find for the plaintiff." There is no exception to this instruction. The jury returned a general verdict for the plaintiff, and also answered some special interrogations, the first question and answer being as follows: "When did defendant, Schultz, first take possession of the land in question? Answer. After the year 1869." If there was evidence to support this answer,—and there certainly was,—it would seem to be conclusive against defendant's claim of 20 years' adverse possession prior to October 31, 1889. But there is also a legal reason why the defendant could not have acquired any adverse possession of this land in 1869. The land was at that time in the "Indian country," and in possession of the Sisseton and Wahpeton Indians, and so remained until their title was extinguished by treaty,—of which we must take notice,—which was originally entered into September 20, 1872, but was subsequently modified and finally accepted by the secretary of the interior on June 19, 1873, and was ratified by congress on June 22, 1874. 18 Stat. 167. The Supreme Court of the United States, in speaking of other land covered by the same grant, and in possession of the same tribes, said: "The land in controversy, and other lands in Dakota, through which the Northern Pacific Railroad was to be constructed, was within what is known as 'Indian country.' At the time the act of July 2, 1864, was passed, the title of the Indian tribes was not extinguished. But that fact did not prevent the grant of congress from operating to pass the fee of the land to the company. The fee was in the United States. The Indians had merely a right of occupancy,—a right to use the land subject to the dominion and control of the government. The

grant conveyed the fee subject to this right of occupancy. The railroad company took the property with this incumbrance. The right of the Indians, it is true, could not be interferred with or determined except by the United States. No private individual could invade it, and the manner, time, and conditions of its extinguishment were matters solely for the consideration of the government, and are not open to contestation in the judicial tribunals." *Butts* v. *Railroad Co.*, 119 U. S. 55, 7 Sup. Ct. 100. From this language it is clear that the exclusive possession was in' the Indians until the extinguishment of their title, which certainly was not earlier than June 19, 1873. Until that time no private individual could invade that possession, and hence there could have been no adverse possession on the part of the defendant that courts could recognize. The defendant failing to show adverse possession for the time required by law, his claim of title must fall, and it becomes unnecessary for us to discuss the various errors assigned upon the instruction of the court defining adverse possession and its various constituent elements, all of which were given upon the theory that the length of time of such possession should be found in defendant's favor. But defendant was in possession, and could be ejected only by one showing a superior right. This, it is claimed, plaintiff failed to show.

We first notice the pleadings as they stood at the time of the trial. The complaint was exceedingly brief. It alleged that the plaintiff was the fee owner of certain land (describing it,) and that defendant was in possession thereof, and wrongfully withheld the same, and that plaintiff had been damaged in a certain sum. The answer contained no denials, general or special; hence no denial of plaintiff's ownership. True, it alleged ownership in defendant, which was inconsistent with ownership in plaintiff, but that conclusion of ownership was based upon certain allegations of fact in the answer, to-wit, an adverse possession by defendant for more than 20 years prior to the commencement of the action. It is very certain that defendant never intended to deny that plaintiff held the record title. His purpose was to avoid that title

in two ways: First, by showing that his adverse possession had ripened in title by prescription, and that plaintiff was barred, under the statute, from setting up his record title; and, second, he attacked the record title by alleging that the conveyance under which plaintiff claimed was given and received, while the premises were in the actual possession of defendant, claiming the same under title adverse to that of plaintiff's grantor. This latter allegation, if true, rendered the conveyance void, under § 3303, Comp. Laws, then in force. In this state of the pleadings, it is clear that plaintiff's record title stood admitted, and that the burden rested upon defendant to establish one or the other of the matters pleaded in avoidance. As we have seen, he failed in proving the former, the jury having directly found against him. As matter of law, he as completely failed in the latter. It is apparent throughout the case, and is expressly stated in the abstract, that "defendant claims no other than a naked possession of the land,. and claims to hold by no other right or title." Section, 3303, Comp. Laws, reads: "Every grant of real property, other than one made by the territory, or under a judicial sale, is void, if at the time of the delivery thereof, such real property is in the actual possession of a person claiming under a title adverse to that of the grantor." This section, ever of doubtful utility, has been dropped from the Revised Codes of 1895. But it could not aid defendant in this case. His possession was not such a one as the law contemplated should defeat a transfer by the true owner. The statute declares that the property must be in the "actual possession of a person claiming under a title adverse to that of the grantor." Under what title was defendant claiming? Confessedly, under nothing but naked possession, which is no title. He could not have been claiming title by prescription, because, under his own testimony, that did not ripen until October 4, 1889, which was subsequent to the conveyance to plaintiff. The statute never was intended to apply to a case where the occupant could base his claim of ownership on nothing higher than a trespass. It cannot be that a deed executed and delivered by the patent holder must be defeated if

it subsequently appear that the day preceding the conveyance a party became a trespasser upon the land, and claimed title to the same by adverse possession. Such a claim would be too absurd for the law to contemplate; yet defendant's position leads directly to it. The object of such statutes was to prevent the transfer of "fighting" titles, whereby the rich and influential might be able to oppress the poor. Consequently, when there were diverging and distinct chains of title, the party whose ownership was not fortified by the strong presumption conferred by possession was prohibited from conveying his interests until he had obtained possession. The transfer was regarded as a species of champerty or maintainance, and received the law's disapproval. The nature and purpose of such statutes are fully discussed in Sedg. & W. Tr. Title Land, § 190. As it is there stated, these statutes have certainly outlived their usefulness; hence courts are entirely unwarranted in giving increased latitude to their operation. See, upon the construction of this statute, *Crary* v. *Goodman*, 22 N. Y. 170; *Higinbotham* v. *Stoddard*, 72 N. Y. 94.

Since the defendant failed to establish by proof any of the allegations by which he sought to avoid the record title of plaintiff, it would seem to be immaterial if plaintiff did fail to make entire proof of such record title, or if the court erred in ruling upon the evidence offered for that purpose. But it is true that plaintiff did assume, in the first instance, to show his record title. Therefore defendant claims that the case was tried below upon the theory that there was a specific denial of the plaintiff's title, and hence the court erred in refusing to permit defendant, after verdict, to file an amended answer denying plaintiff's title. Defendant claimed that the proffered answer represented the issues upon which the case was tried. The court refused to receive it. Under the circumstances, the matter was peculiarly within the judicial discretion of the trial court. The case must be very plain to warrant a reversal. But, had the amended answer been received, the judgment should have been the same. Plaintiff introduced all the deeds to complete the chain of title

from the railroad company to himself. No point is made against these. But it is claimed that he failed to show title in the railroad company. He offered in evidence a properly certified copy, from the general land office, of a list of lands selected by the Northern Pacific Railroad Company, and claimed under the terms of its grant. This was received over defendant's objection of incompetency. It is claimed that we had at that time no statute in this state making such certified copy competent or admissable evidence. We shall not pass upon the point. We confess we do not see the materiality of this evidence. Plaintiff says in his brief that it was offered for the purpose of identifying the land. But the parties were entirely agreed as to the description and location of the land. There was no issue upon that point. Nor was it material or competent on the question of title. As this court said in *Grandin* v. *La Bar*, 3 N. D. 446, 57 N. W. Rep. 241, a selection by the railroad company could not pass title. The title of the railroad company, if it had title, rested in public statutes and treaties, of which the court must take judicial notice. It has frequently been held that the grant to the Northern Pacific Railroad Company of July 2, 1864, was a grant in *præsenti*; that it at once vested the title to the lands granted within the primary limits in the company, subject to be defeated by the terms named in the grant. *Buttz* v. *Railroad Co., supra*; *Grandin* v. *La Bar, supra*; *St. Paul & P. R. Co.* v. *Northern Pac. R. Co.*, 139 U. S. 1, 11 Sup. Ct. 389. That the lands in question were at that time within the Indian country, and in the possession of the Indians, is a matter of which the court must take notice. *U. S.* v. *Beebee*, 2 Dak. 292, 11 N. W. Rep. 505; *French* v. *Lancaster*, 2 Dak. 346, 47 N. W. Rep. 395. That such right of occupancy was not terminated prior to June 19, 1873, we have already seen, and such termination rested in a public treaty. As said in *Buttz* v. *Railroad Co., supra*, prior to the termination of the Indian right of occupancy no private right to the land could be initiated, and, upon the termination of that right, *eo instanti* the title vested in the railroad company. No private interest could intervene.

While the offered list was immaterial, it was at the same time harmless, and its admission could not be reversible error.

There were many exceptions to the charge of the court which are here not specifically noticed, but what we have said shows that none of them were well taken.

Judgment affirmed.   All concur.

CORLISS, J., concurs in the result, without expressing any opinion on the point whether adverse possession can be initiated while land transferred by the government subject to a right of general occupation by an Indian tribe remains subject to such right.