[File No. 6483.]

FRITZ F. HEUER, Respondent, v. ANNA HEUER KRUSE, Executrix of the Estate of Fritz Heuer, Deceased, Peter Heuer, Anna Heuer Kruse, Claus Heuer, John Heuer, Herman Heuer and Julius Heuer, Appellants.

(274 N. W. 863.)

Opinion filed September 9, 1937.

*R. E. Swendseid,* for appellants.

*C. N. Cottingham* and *F. F. Wyckoff*, for respondent.

NUESSLE, J. This action was brought to quiet title to certain land in Mountrail county. Plaintiff had judgment. The defendants appeal.

The facts material to the matter here in controversy may be stated briefly as follows: Fritz Heuer was a resident of Iowa. He had a family consisting of one daughter and six sons. The plaintiff Fritz F. Heuer was one of these sons. He also lived in Iowa. Fritz Heuer owned a quarter section of land in Mountrail county, North Dakota. This land is the tract over which the present controversy arose. The land is farming land. It was not profitable. He had nothing from it but trouble and taxes. He thought that the plaintiff could go out on the land and make a living on it and pay the taxes. So, in 1922 he proposed to the plaintiff that if the latter would go to North Dakota and make his home upon the land he would sell it to him for $3,000 upon ten years' time with interest at 5 per cent per annum, the plaintiff to pay the taxes as the same fell due, but that no payment need be paid on account of the principal and that the interest need not be paid by the plaintiff if he could not reasonably make such payments; that plaintiff's share in his father's estate would amount to more than the purchase price of the land; and that upon Fritz Heuer's death whatever remained unpaid on such contract should be deducted from the plaintiff's share in such estate. The plaintiff was doubtful as to whether he should enter into this arrangement. His father told him to go home and think it over. So the plaintiff went

home where he and his wife talked the matter over. And though his wife objected to his doing so the plaintiff accepted his father's proposal. Fritz Heuer and the plaintiff then went to their local banker and asked him to write up a contract. The banker did so. He used one of the bank's printed forms and made no copy. He included in the instrument thus drawn only such parts of the understanding and agreement as touched the price, the term, and the payment of the taxes. So far as appears nothing was said therein as to the interest nor as to the time of payment other than that the term should be ten years. The banker testified that this instrument was only incidental to and a part of the understanding and agreement between Fritz Heuer and the plaintiff. Both of them signed it. The banker, however, kept it and put it in a pigeon hole in the bank's vault. He left the employ of the bank in 1926 and never again saw the paper which he had written for the Heuers. It appears, however, that some years after the instrument was executed Fritz Heuer procured and destroyed it.

Pursuant to the arrangement thus made between the plaintiff and his father the plaintiff took over the land. He collected the rental for the year 1922 and rented it to a tenant for the years 1923 and 1924. In the spring of 1925 he and his wife moved to North Dakota and took up their residence upon the land. Plaintiff built thereon a house, a barn, various other small buildings, fences, dug a well and erected a windmill, planted trees and farmed the land. He paid the taxes thereon beginning with those for the year 1923 and thereafter up to and including those for the year 1929. He made no payment on the principal of the purchase price. But in 1928 he opened a gravel pit on the land and sold gravel therefrom and out of the proceeds paid his father $150. In 1933 he sent his father one-fourth of the first wheat allotment payment, which amounted to $17.50. His explanation as to the latter payment is that he was informed that since the title stood in his father's name it was necessary that a portion of the wheat allotment money be paid to him. During all of these years and until 1933, plaintiff exercised undisputed dominion over the property. In 1929 he insured the buildings for a five-year period. Crops were poor and times hard. So in 1933 he obtained work as a highway maintainer and on account of this employment moved to another farm. He failed to pay taxes for the year 1930 and thereafter because of

lack of money. In 1926 or 1927 Fritz Heuer made a will. In that will he devised the land in question to the plaintiff, conditioned on his paying the interest and taxes thereon. Thereafter he made a second will giving all of his property to plaintiff's mother and making no mention of this North Dakota land. Plaintiff's mother died in 1933. Fritz Heuer then made a third will which was probated and under which his daughter Anna Heuer Kruse qualified as executrix. Under the terms of this will he gave the plaintiff five dollars and made no mention of the North Dakota land. He died in 1935 and left an estate valued at several thousand dollars, which, under the terms of his will, except for the five dollars given to the plaintiff, was divided equally among the six other children. It appears that each of these others has received or will receive about $1,200. The North Dakota land at the time the arrangement between Fritz Heuer and the plaintiff was entered into, was worth about $3,000. The testimony is that at the time of the trial it was worth not to exceed $1,000 without the improvements which had been placed thereon by the plaintiff. These improvements were worth reasonably from $1,200 to $2,000.

It appears that some years after the plaintiff came to North Dakota and took up his residence upon the land in question, ill feeling developed between himself and his father. Fritz Heuer thereafter said that the land was his and denied that the plaintiff had any right or interest in it. He told plaintiff's sister, the defendant Anna Heuer Kruse, that the plaintiff was not entitled to anything out of his estate unless she saw fit to give it to him; that it was for her to determine how much, if anything, the plaintiff should have. About this time, in the fall of 1933, he executed a power of attorney to Anna, authorizing her to take possession of the land in question and oust the plaintiff therefrom. Acting under this power of attorney she took possession of the land without the consent and over the objection of the plaintiff. This was the condition of affairs at the time of Fritz Heuer's death. Thereafter plaintiff brought the instant action.

Plaintiff's contention is that the arrangement between himself and his father resulted in an executed gift and advancement to him of the land; that therefore he is the owner thereof and entitled to have title quieted in him. On the other hand, the defendants contend that there was no executed gift and advancement; that at most there was merely

a contract of sale; that this contract was cancelled and abrogated on account of the failure of plaintiff to comply with the terms thereof and that accordingly the land was the property of Fritz Heuer at the time of the latter's death and that plaintiff had no interest therein, and so they are entitled to judgment in their favor.

The trial court found the facts to be substantially as stated above and held that whether or not there was an executed gift and advancement there was a contract between the plaintiff and his father Fritz Heuer which was executed in part by reason of the plaintiff coming to North Dakota, occupying the land, and making the improvements thereon as he did; that under the terms of said contract whatever remained unpaid on the purchase price of the land at the time of Fritz Heuer's death was to be deducted from the plaintiff's share in Fritz Heuer's estate; that such contract had not been cancelled or abandoned and was valid and enforceable; that accordingly the plaintiff should have title quieted in him upon the payment of the tax charges. that he had agreed to pay but which were paid by Fritz Heuer or the defendant executrix. Judgment was ordered and entered accordingly. Thereupon the present appeal was perfected, the defendants asking for a trial de novo in this court.

The defendants insist that there was no executed gift. It is clear there was no conveyance and it is likewise clear that Fritz Heuer intended there should be none prior to his death unless the payment of the stipulated purchase price were made. But what of it? His intention was that if the plaintiff went upon the land pursuant to the arrangement made between them, improved the same and occupied it as his home, the land should be the plaintiff's when Fritz Heuer died whether such payment had been made or not. In other words, there was a contract to give in the future and the making of the payments was not a condition precedent to its performance. The effect of the writing was merely to fix the value that should be put upon the land and determine the amount that should be charged against the plaintiff's share of his father's estate upon the decease of the latter. So far as the equitable rights of the parties are concerned, no distinction can be drawn between a promise to give land and a contract to sell, where, in reliance upon the promise the promisee enters upon the property, the subject thereof, and so substantially complies with the

terms of such agreement as may have been made that it would be unjust and inequitable on the part of the promisor not to perform. One is as enforceable as the other. Indeed, it has been held that both are contracts of sale. See Moore v. Small, 19 Pa. 461. And Professor Williston in discussing estoppel as a substitute for consideration, among other things, says: "In connection with the subject of enforcement of promises because of a promissory estoppel, a doctrine of equity in regard to certain gratuitous promises should be mentioned. Where land has been gratuitously promised to one who, relying upon the promise, has entered upon the land and made improvements, it has been held that equity will specifically enforce the promise to convey the land. A promise not to enforce or foreclose a mortgage, in reliance upon which the promisee has made improvements, has been similarly held binding. It is to be noticed that in enforcing conveyances in such cases, equity regards only possession of the land and improvements upon it. No other detriment would suffice. It is probable that the actual delivery of possession of the land has been regarded as analogous to completing a gift." 1 Williston, Contr. § 139. While the facts in the instant case are dissimilar to those in the case of Heuer v. Heuer, 64 N. D. 497, 253 N. W. 856, the principles that were determinative in that case are determinative in this. In addition to the authorities cited in Heuer v. Heuer, supra, see Dunn v. Berkshire, 175 Ill. 243, 51 N. E. 770; Freeman v. Freeman, 43 N. Y. 34, 3 Am. Rep. 657; Walter v. Hoffman, 267 N. Y. 365, 196 N. E. 29, 101 A.L.R. 919, and note; Pom. Spec. Perf. of Contr. 3d ed. §§ 130 et seq.

In the instant case the plaintiff did as he had agreed to do. There was substantial performance on his part. He went to North Dakota. He took up his residence on the land. The improvements placed thereon by him pursuant to and in reliance on the agreement were substantial and permanent and, considering the value of the land, of relatively great value. So far as the record shows there was no dissatisfaction on Fritz Heuer's part with the plaintiff's performance for some years after the arrangement was entered into and no disavowal of his agreement. In the meantime plaintiff was continuing to perform. The first will made by Fritz Heuer tended to evidence a rec-

ognition that the plaintiff was to have the land without the payment of the stipulated purchase price. And thereafter, when it appears that Fritz Heuer became dissatisfied with the plaintiff—the record is wholly silent on what account—he took no proper steps to cancel the contract or cut off the plaintiff's rights in the land. He apparently assumed that by disaffirming and denying those rights and refusing to perform his promise or make provision for its performance, he could thereby terminate the whole arrangement. But the plaintiff never acquiesced in the cancellation and abrogation of the contract. On the contrary he continued at all times to assert his claims to the land under the terms of the original agreement. There was as much of a breach on the plaintiff's part during his first years of occupancy of the land as there was at any later time. Yet Fritz Heuer permitted him to remain thereon and make such improvements as were made. It would be unjust and inequitable to allow Fritz Heuer and his executrix and devisees to refuse to perform but nevertheless enjoy the fruits of performance on the part of the plaintiff.

The judgment of the district court is affirmed.

CHRISTIANSON, Ch. J., and BURR and MORRIS, JJ., and ENGLERT, Dist. J., concur.

Mr. Justice BURKE did not participate, Hon. M. J. ENGLERT, Judge of First Judicial District, sitting in his stead.