Lawrence **LINDVIG** and Mary Zaye Lindvig, Plaintiffs, Appellees and Cross-Appellants,

v.

John **LINDVIG** and Mabel Lindvig, Defendants, Appellants and Cross-Appellees.

Civ. No. 11007.

Supreme Court of North Dakota.

April 10, 1986.

---

Rustad & Schmitz, Williston, for plaintiffs, appellees and cross-appellants; argued by Cathy Howe Schmitz.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendants, appellants and

cross-appellees; argued by Claudette M. Abel; appearance by Ward M. Kirby.

MESCHKE, Justice.

John and Mabel Lindvig appeal from a judgment quieting title to 16.89 acres of land in Lawrence and Mary Zaye Lindvig. Lawrence and Mary Zaye have filed a cross-appeal from that portion of the judgment which quiets title to the mineral rights underlying 2.27 acres in John and Mabel. We affirm in part and remand for modification of the judgment to include an easement for a sewer line and drainage.

John and Lawrence are brothers. Prior to 1947 they farmed with their father, Henry Lindvig. In 1947 Lawrence married Mary Zaye, and they moved into an existing house located on the home quarter of Henry's farm. John and Mabel, who were married later in 1947, planned to build a home on land owned by John, but at the urging of John's father they built their home on a portion of the Lindvig home quarter. John contends that his father promised to give him a portion of the home quarter upon which the house was located, and in this litigation he asserts ownership of a 19.16 acre tract.

Henry, Lawrence, and John continued a farming and ranching operation after 1947, and various improvements were placed on the 19.16 acre tract. In 1958, Henry and Sadie signed a warranty deed conveying land, including the 19.16 acre tract, to Henry and Lawrence. In 1964, Henry, Sadie, Lawrence, and Mary Zaye signed a quit claim deed conveying the property to Lawrence. After Henry's death in 1973, the relationship between John and Lawrence began to deteriorate, with ownership of the 19.16 acres becoming the focal point of their dispute. John continued to make improvements after learning of Lawrence's title to the land, even after Lawrence requested that no further permanent structures be placed upon the land.

Lawrence and Mary Zaye ("Lawrence") commenced this action to quiet title to property including the 19.16 acres. John and Mabel ("John") answered and counterclaimed, requesting that the court quiet title to the 19.16 acres in them, or, in the alternative, for a judgment for the value of the improvements to the property. The trial court quieted title to a 2.27 acre tract, including John and Mabel's home, in John and Mabel, and quieted title to the remaining 16.89 acres within the 19.16 acre tract in Lawrence and Mary Zaye. The court also granted use of the quonset to John for a period of five years and allowed removal by him of certain improvements. All remaining improvements were awarded to Lawrence. The court also granted to each side an easement to use the road which provides access to the property.

The following issues are presented on appeal:

I. Were the 1958 and 1964 deeds champertous and therefore void?

II. Are the trial court's findings that John did not acquire title to the entire 19.16 acres by either an executed parole gift or adverse possession, and that John's use of the property was pursuant to a tenancy at will, clearly erroneous?

III. Did the trial court's failure to award a money judgment for the value of improvements made to the property by John constitute reversible error?

IV. Did the trial court err in refusing to hold Lawrence in contempt for violating a pre-trial injunction?

V. Did the trial court err in quieting title to the mineral rights underlying the 2.27 acres in John?

## I. CHAMPERTY

John contends that at the time the deeds conveying the property were executed in 1958 and 1964, the grantors were not in possession of the 19.16 acres, thereby rendering the deeds champertous and void. At the time of the conveyances, Section 12–1714 of the North Dakota Century

Code[1] prohibited conveyance of property by one who had not been in possession of the property within one year:

> "*12–17–14. Buying pretended titles —Misdemeanor.*— Every person who buys or sells or in any manner procures, or makes or takes any promise or covenant to convey any pretended right or title to any lands or tenements, unless the grantor thereof or the person making such promise or covenant has been in possession, or he and those by whom he claims have been in possession of the same, or of the reversion and remainder thereof, or have taken the rents and profits thereof, for the space of one year before such grant, conveyance, sale, promise, or covenant is made, is guilty of a misdemeanor."

This Court has held that deeds executed in violation of the statute are void as to persons in adverse possession of the land purportedly conveyed. *Gajewski v. Bratcher,* 221 N.W.2d 614, 633 (N.D.1974).[2]

We conclude that the deeds in this case were not executed in violation of the statute. The record clearly demonstrates that at the time in question Henry and Lawrence, as well as John, were using the 19.16 acres as part of the family farming operation. John has failed to establish that the property was not in the possession of the grantors when the deeds were executed. Thus, we conclude that the deeds were not executed in violation of the statute.

## II. FINDINGS

John contends that the trial court's findings that John and Mabel did not acquire title to the entire 19.16 acres by either an executed parole gift or adverse possession, and that John's use of the property was pursuant to a tenancy at will, are clearly erroneous. We will consider these issues separately.

### A. Executed Parole Gift

John asserts that he acquired title to the entire 19.16 acres by an executed parole gift from Henry in 1949. The trial court found an executed parole gift as to the 2.27 acres immediately surrounding John's home, but found no intent by Henry to give John the entire 19.16 acres.

■ A party claiming land pursuant to an alleged executed parole gift has the burden of proving each element requisite to constitute a valid gift. *Hagerott v. Davis,* 73 N.D. 532, 551, 17 N.W.2d 15, 25 (1944). When such a claim is asserted after the death of the alleged donor, proof of each element must be by clear and convincing evidence. *Schrank v. Meade,* 145 N.W.2d 514, 518 (N.D.1966).

■ John contends that this case is factually similar to two cases in which this Court held that, under the facts presented, the statute of frauds did not defeat parole gifts of land. *Heuer v. Kruse,* 67 N.D. 552, 274 N.W. 863 (1937); *Heuer v. Heuer,* 64 N.D. 497, 253 N.W. 856 (1934). We agree with the holding of those cases: if the donee has taken possession of the land and made improvements thereon, so that avoidance of the gift would work a substantial injustice, the statute of frauds will not defeat a parole gift of land. *See Heuer v. Heuer, supra,* 64 N.D. at 503, 253 N.W.

---

1. At the time of the 1958 conveyance, this provision was codified at Section 12–17–14 of the North Dakota Revised Code of 1943. Section 12–17–14, N.D.C.C., was repealed in 1973. 1973 N.D.Sess.Laws ch. 116. We note, however, that if the deeds had been executed in violation of the statute and consequently were void at that time, the subsequent repeal of the statute would not necessarily validate the deeds. *See* Section 31–11–05(30), N.D.C.C. ("Time does not confirm a void act.").

2. But, the doctrine of champerty has not been favored by this Court, even before its repeal.

*See, e.g., Galbraith v. Paine,* 12 N.D. 164, 173, 96 N.W. 258, 260 (1903) ("It is true the common-law doctrine and statutes declaratory thereof seem to be in increasing disfavor in a number of states, on account of the embarrassing restrictions placed upon the right of free alienation."); *Kreuger v. Schultz,* 6 N.D. 310, 313, 70 N.W. 269, 270 (1896) (labelling a previously repealed champerty statute "ever of doubtful utility"). For a historical analysis of the legislative and judicial development of the doctrine in this state, see *Loy v. Kessler,* 76 N.D. 738, 745–750, 39 N.W.2d 260, 264–267 (1949).

at 858–859. The donee, however, still has the burden of establishing the requisite elements of a valid gift.

█ In the cases cited by John, this Court found that there was an executed parole gift of the land.[3] Those cases, however, are clearly distinguishable from the instant case because there was a clearly defined area of land—a quarter section—involved. In this case, there is no evidence that Henry intended to give John the entire 19.16 acres. Rather, the rest of the 19.16 acres appears to be the area which John has gradually encroached upon as he has expanded his farming operations over the past 35 years.

In addition, there is substantial evidence which demonstrates that Henry continued to use most of the 19.16 acres in the family farming operation, made improvements thereon, and exercised dominion and control over the property after the alleged gift occurred in 1949. This evidence conflicts with the requirement that the donor relinquish all control over the property as a prerequisite to a finding of a valid gift:

> "' "There must be an intention on the part of the donor to relinquish the right of dominion on one hand and to create it on the other, and the delivery must be not only of possession but also of the dominion and control of the property. To have the effect of a valid gift, therefore, the transfer of possession and title must be absolute and go into immediate effect, so far as the donor can make it so by intent and delivery, and must be so complete that if he again resumes control over it without consent of the donee he becomes liable as a trespasser." ' "

*Zeman v. Mikolasek*, 75 N.D. 41, 53, 25 N.W.2d 272, 279 (1946) (quoting *Ramsdell v. Warner*, 48 N.D. 96, 102, 183 N.W. 281, 283 (1921) ). *See also Schrank v. Meade, supra*, 145 N.W.2d at 518; *Hagerott v.*

*Davis, supra*, 73 N.D. at 550–551, 17 N.W.2d at 24–25.

In order to sustain his burden of proof, John had to establish that it was Henry's intention in 1949 "to then and there transfer title" to the entire 19.16 acres to John. *See Schrank v. Meade, supra*, 145 N.W.2d at 518. John failed to meet that burden. The trial court found that Henry did not intend to make a gift of the entire 19.16 acres to John. Because the record indicates that John failed to establish that Henry intended to gift the entire 19.16 acre tract of land, and that Henry exercised dominion and control over most of that tract after the alleged 1949 gift, we conclude that the trial court's finding is not clearly erroneous.[4]

### B. Adverse Possession

The trial court found that John's use of the 19.16 acre tract was not "adverse" so as to give rise to title by prescriptive use. John asserts that this finding is clearly erroneous.

█ The burden of proving adverse possession rests with the party alleging it, and it must be established by clear and convincing evidence. *E.g., Benson v. Taralseth*, 382 N.W.2d 649, 653 (N.D.1986). The determination of whether there has been an adverse use is a question of fact which will not be set aside on appeal unless it is clearly erroneous. Rule 52(a), N.D.R. Civ.P.; *Benson v. Taralseth, supra*, 382 N.W.2d at 653.

To constitute adverse use, the acts relied upon by the claimant "must not only be actual, but also visible, continuous, notorious, distinct, and hostile, and of such character as to unmistakably indicate an assertion of claim of exclusive ownership by the occupant." *Woodland v. Woodland*, 147 N.W.2d 590, 597 (N.D.1966). We have ap-

---

**3.** We note that in *Heuer v. Heuer, supra*, and *Heuer v. Kruse, supra*, review was by trial de novo in this Court. Trial de novo in the Supreme Court has since been abolished, and our review of factual matters in non-jury cases is now governed by the "clear error" standard. Rule 52(a), N.D.R.Civ.P.

**4.** Lawrence does not challenge the trial court's findings and conclusions regarding the parole gift of the 2.27 acres to John.

plied this definition on numerous occasions. *See, e.g., Benson v. Taralseth, supra,* 382 N.W.2d at 653, and cases cited therein. Possession which is permissive in its inception can become adverse only where there is a disclaimer of the true owner's title or there are acts by the user of such an unequivocal nature that notice of the hostile character of the possession is brought home to the record owner. *Torgerson v. Rose,* 339 N.W.2d 79, 84 (N.D.1983). A party claiming adverse use of property when possession was originally permissive bears a particularly heavy burden:

> " 'The law is very rigid with respect to the fact that a use permissive in the beginning can be changed into one which is hostile and adverse only by the most unequivocal conduct on the part of the user. The rule is that the evidence of adverse possession must be positive, must be strictly construed against the person claiming a prescriptive right, and that every reasonable intendment should be made in favor of the true owner.' "

*Rovenko v. Bokovoy,* 77 N.D. 740, 753, 45 N.W.2d 492, 498 (1950) (quoting *Lindokkken v. Paulson,* 224 Wis. 470, 475, 272 N.W. 453, 455 (1937)). We have observed that acts which might evidence a hostile claim as between strangers might not evidence hostility where the parties are related. *Torgerson v. Rose, supra,* 339 N.W.2d at 84.

■ The record amply supports the trial court's finding that John failed to meet his burden of establishing adverse use of the property for the statutory period. It is undisputed that John's use of the property was permissive at its inception. The record is replete with testimony regarding the continuing use of the 16.89 acres by Henry and Lawrence throughout the time frame involved, indicating that John's use of the property was not "notorious," "distinct," "hostile," or "exclusive." The testimony discloses a situation which undoubtedly was quite common at that time on family farms in this state—the father and two sons used this land together as part of their various farming and ranching activities. Where all three were using the land together in their operations, the use by one does not bear the requisite hostile character to evince an assertion of exclusive ownership.

We are not left with a definite and firm conviction that a mistake has been made. Accordingly, we conclude that the trial court's finding that John's use of the land was not adverse is not clearly erroneous.[5]

### C. Tenancy at Will

■ The trial court found that John's use of the 16.89 acres was pursuant to a tenancy at will. John contends that this finding is clearly erroneous.

We fail to see how the court's finding of a tenancy at will affects the ultimate issue

---

**5.** John further contends that Lawrence cannot challenge John's assertion of adverse possession because of Sections 28–01–04 and 28–01–05, N.D.C.C., which provide that no action for recovery of real property or founded upon title to real property may be maintained by a party unless he or his predecessors held possession within twenty years. In essence, this is a reiteration of John's argument on the champerty issue. We have previously concluded that Henry and Lawrence were in possession of the property in 1964, within the twenty year requirement of Sections 28–01–04 and 28–01–05, N.D.C.C.

In addition, we note that there is a statutory presumption of possession by the record titleholder:

"*28–01–07. Presumption against adverse possession of real estate.*—In every action for the recovery of real property or for the possession thereof, the person establishing a legal title to the premises shall be presumed to have been possessed thereof within the time required by law, and the occupation of such premises by any other person shall be deemed to have been under and in subordination to the legal title, unless it appears that such premises have been held and possessed adversely to such legal title for twenty years before the commencement of such action."

We have discussed the interplay of these statutes in *Martin v. Rippel,* 152 N.W.2d 332, 338–339 (N.D.1967). We concluded that when a claimant fails to meet his burden of proving adverse possession, the presumption of possession embodied in Section 28–01–07, N.D.C.C., applies to satisfy the requirements of Section 28–01–04, N.D.C.C.

of title to the land.[6] Nor does John allege that the court's finding of a tenancy at will affected its decision regarding ownership of the improvements. Thus, because any error in the trial court's finding of a tenancy at will would not affect the ultimate disposition of this case, we find it unnecessary to address the issue.[7]

### III. IMPROVEMENTS

■ John contends that the trial court erred in failing to award a money judgment for improvements made to the 16.89 acres by John, including a quonset,[8] grain bins, a warehouse, a barn, corrals, wells, and two underground fuel tanks. The trial court awarded John use of the quonset and fuel tanks for five years, and allowed him to remove the barn and corrals.[9] The trial court further determined that, as "rent" for John's five-year use of Lawrence's quonset, ownership of the fuel tanks would "vest" in Lawrence at the expiration of the five year period, and that all other improvements on the 16.89 acres were "exclusively owned" by Lawrence.

John contends that to prevent unjust enrichment he was entitled to a money judgment for the improvements awarded to Lawrence. Determinative of this issue is Section 32–17–08, N.D.C.C., which provides in pertinent part:

> "*32–17–08. Answer—Counterclaim.*— In an action to determine adverse claims, a defendant in his answer ... may set forth his rights in the property as a counterclaim and may demand affirmative relief against the plaintiff and any codefendant, and in such case he also may set forth a counterclaim and recovery from plaintiff or a codefendant for permanent improvements made by him or those under whom he claims, holding under color of title in good faith adversely to the plaintiff or codefendant against whom he seeks a recovery." [10]

We have interpreted this statute as barring a claim for the value of improvements by one who was not holding under color of title. *Greeman v. Smith*, 138 N.W.2d 433, 437 (N.D.1965). We further recognized that "[t]here can be no color of title in an occupant who does not hold under any instrument, proceeding, or law purporting to transfer to him the title or to give to him the right of possession." *Greeman v. Smith, supra*, 138 N.W.2d at 437 (quoting *Deffeback v. Hawke*, 115 U.S. 392, 407, 6 S.Ct. 95, 102, 29 L.Ed. 423, 428 (1885)). John does not claim that he was holding the 16.89 acres under color of title. Therefore, under Section 32–17–08 and *Greeman*

---

**6.** Apparently John contends that an error in finding a tenancy at will would necessarily add support to his claims of parole gift and adverse possession. However, John has failed to present evidence sufficient to establish a parole gift or adverse possession of the 16.89 acres, and any lack of evidence to support the court's finding of a tenancy at will certainly cannot "cure" John's lack of proof on those issues.

**7.** John's status as a user of the land may in fact have been less than that of a tenant at will. The trial court's finding of a tenancy at will appears to be based upon Section 47–04–02, N.D.C.C., which identifies the four estates in land recognized in this State. An estate in land, however, confers the right to exclusive possession, whereas John's use of the property in this instance was not exclusive. Thus, rather than holding a leasehold interest, the evidence indicates that John may have been a mere licensee, allowed to use portions of the land for specific purposes. For a discussion of the distinctions between a lease and a license, see *Lee v. North Dakota Park Service*, 262 N.W.2d 467, 470–473 (N.D.1977).

**8.** Although the quonset appears to be the focal point of the dispute regarding improvements, the record indicates that the quonset, built in 1952, was paid for by Henry.

**9.** John also asserts in his brief that the trial court, in allowing only six months to remove the barn and corrals, violated the "clear provision" of Section 47–06–04, N.D.C.C., "which provides that a 'tenant upon agricultural land' may remove the property 'at any time *within eight months* of the termination of his lease and the vacating of said premises'...." The remainder of that sentence in the statute, however, unambiguously provides that it is applicable only to "any grain bin, granary, or structure for the purpose of housing grain." John does not claim that the barn and corrals housed grain. The statute is therefore clearly inapplicable.

**10.** *See also* Section 32–17–09, N.D.C.C.

*v. Smith, supra,* John is not entitled to recover the value of the improvements.[11]

## IV. CONTEMPT

 John asserts that the trial court erred in refusing to hold Lawrence in contempt for violating a pre-trial order of the court[12] requiring him to replace certain doors and locks on the quonset and to remove specified items from the quonset and the 19.16 acres. John moved for an order to show cause, alleging that Lawrence had failed to comply with the court's prior order, but no ruling was made on the motion and the case proceeded to trial. John again raised the issue in a post-trial motion to reconsider. The court in its Memorandum Opinion on Motion to Reconsider stated that "[a]fter a period of cooling I will not inflict punishment for the violation of the previous Court's order." The court continued: "The 'status' has been 'quo' for a considerable period of time and let us now live according to the judgment."

We agree with the trial court's sentiments. No useful purpose would be served by now resurrecting the issue of any alleged violation of the court's pre-trial order. The judgment constitutes the final determination of the issues raised, and the parties must now abide by its terms rather than the terms of the interim order.

Furthermore, we conclude that there was no prejudice to John. Although he contends that a favorable ruling prior to trial would have weakened Lawrence's credibility and may have had a bearing on the final judgment, John does not allege that he was denied the opportunity to present evidence at trial of Lawrence's non-compliance with the order. It is the evidence presented at trial which the court must consider in reaching a determination on the merits of a case. We find no prejudicial error in the court's failure to rule on the motion.

## V. MINERAL RIGHTS

 Lawrence has filed a cross-appeal, alleging that the trial court erred in quieting title to the mineral rights underlying the 2.27 acres in John. Lawrence claims that the court should have severed the mineral rights from the surface estate.

It is well settled that a general conveyance of land, without any exception or reservation of the minerals therein, carries with it the minerals as well as the surface. *McLaughlin v. Lambourn,* 359 N.W.2d 370, 374 (N.D.1985); *Sibert v. Kubas,* 357 N.W.2d 495, 496 (N.D.1984). The trial court found that John acquired the 2.27 acres through an executed parole gift from Henry. There is no evidence which would demonstrate any intent by Henry to reserve or except the minerals underlying the 2.27 acres.

Lawrence has cited authority for the proposition that there must be actual possession of the mineral estate before there can be adverse possession of it. John did not, however, acquire the 2.27 acres by adverse possession; he acquired it by gift. Therefore, Lawrence's argument based upon John's alleged lack of actual possession of the mineral estate is inapplicable. We conclude that the court did not err in quieting title to the minerals underlying the 2.27 acres in John.

---

11. Even if John is not entitled to recover a money judgment for improvements that he made on Lawrence's property, we do not believe that it was inconsistent for the trial court to grant relief to John as to certain of those improvements. An action to quiet title is an equitable action. *E.g., Ward v. Shipp,* 340 N.W.2d 14, 18 (N.D.1983); *Trauger v. Helm Bros., Inc.,* 279 N.W.2d 406, 412 (N.D.1979). Thus, it was proper for the trial court to fashion appropriate equitable relief, including the designation of the fuel tanks as "rent" for continued use of the quonset and allowing removal of the barn and corrals. *See Bichler v. Ternes,* 63 N.D. 295, 312–313, 248 N.W. 185, 192 (1933) (allowing removal of barns and fences placed upon land of another). *Compare* § 47–06–04, N.D.C.C. (owner of land may require removal of fixtures placed on land by another).

12. The order was issued by the Honorable Bert L. Wilson, Jr. Judge Wilson subsequently recused himself, and Judge Kerian was designated to preside over the case.

## VI. SEWER EASEMENT

Although not specifically identified as a separate issue by the parties, we address an additional matter of concern in this case. It appears that the sewer septic tank and drainfield for John's house runs beyond the 2.27 acres, onto the 16.89 acres owned by Lawrence. Lawrence acknowledged at trial that he did not assert the right to interfere with the septic tank, but the trial court made no findings and granted no relief regarding the septic tank.

An action to quiet title, although statutory, is essentially an equitable action. *E.g., Ward v. Shipp*, 340 N.W.2d 14, 18 (N.D.1983); *Trauger v. Helm Bros., Inc.*, 279 N.W.2d 406, 412 (N.D.1979). An equitable result in this case requires that John be granted a reasonable easement for the septic tank and drainfield for his home to the extent they lie outside of the 2.27 acres. We therefore instruct the trial court to modify the judgment to provide for such an easement.

We remand for modification of the judgment as to the sewer easement. In all other respects, the judgment is affirmed.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.